## Suffolk Peanut Company *v.* Luden, Appellant.

*Contract—Sales—Acceptance of order.*

Where a dealer issues to his salesmen blank orders which have printed on their face an express stipulation that all sales are to be subject to acceptance by the dealer, and a purchaser gives an order to a salesman on such a blank, as he had been in the habit of doing in previous transactions, and such order is rejected by the dealer as soon as it was received, the purchaser cannot allege as a defense that he had signed the order as an absolute contract of purchase and sale, relying on the statement of the agent that the latter had authority to make an absolute sale and did not always use the printed forms in sending in orders, which were nevertheless filled.

Argued Nov. 14, 1906. Appeal, No. 41, Oct. T., 1906, by defendant, from judgment of C. P. Berks Co., April T., 1904, No. 88, on verdict for plaintiff in case of The Suffolk Peanut Company v. William H. Luden. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before ERMENTROUT, P. J.

The facts are stated in the opinion of the Superior Court.

The defendant presented, inter alia, the following points:

1. Under the law the principal is responsible for the negligence of his agent in the course of his employment. The neglect of the agent is the neglect of the principal. If the jury find that through the negligence of Thomas, the agent for the Suffolk Peanut Company, the plaintiff, in sending in an order taken from the defendant, the defendant lost an opportunity of buying in the market at the same rate, and was compelled by reason of such negligence to buy at a higher rate, the plaintiff would be responsible to the defendant for the difference in the price caused thereby. *Answer:* Declined. [1]

2. The principal is bound by the acts of his agent within the scope of the authority which he is held out to the world to possess, even notwithstanding the agent acted contrary to instructions. If the jury find that the plaintiff's agent, Thomas, was accustomed to make contracts with the defendant which

contracts were recognized by the house and the goods delivered in pursuance thereof, it makes no difference whether the agent of the plaintiff acted beyond his authority or not, as the plaintiff would be bound by any contract which the agent made with the defendant in pursuance of said custom or usage. *Answer:* Declined. [2]

Plaintiff presented these points:

3. The order No. 442 for 500 bags of peanuts was not binding on the plaintiff because it appears from the evidence that it was never accepted and acceded to by the plaintiff, or by any one having authority to bind the plaintiff to its acceptance. The defendant is therefore not entitled to claim any damages from the plaintiff for not filling said order.  *Answer:* Affirmed. [5]

4. Under all the evidence in the case your verdict must be for the plaintiff for the sum of $475.44, with interest from March 4, 1904, to date, making a total of $507.81.  *Answer:* Affirmed. [6]

Verdict and judgment for plaintiff for $507.81. Defendant appealed.

*Errors assigned* were (1, 2, 5, 6) above instructions, quoting them.

*W. K. Stevens,* of *Stevens & Stevens,* for appellant, cited: Pitcher v. Lowe, 95 Ga. 423 (22 S. E. Repr. 678); Hall v. Kimbark, 11 Fed. Cases, 234; Keough v. Leslie, 92 Pa. 424; McNeile v. Cridland, 168 Pa. 16.

*E. Carroll Schaeffer,* with him *C. H. Schaeffer,* for appellee, cited: Slaymaker v. Irwin, 4 Whart. 369; Donaldson v. Kerr, 6 Pa. 486.

OPINION BY HEAD, J., February 25, 1907:

On December 14, 1903, the defendant, a merchant in the city of Reading, gave to the salesman of the plaintiff company, one Thomas, two orders for the purchase of peanuts.  Both of these orders were reduced to writing. by the salesman, in the presence of the defendant, on blanks furnished by the plaintiff for that purpose.  Each order was prepared in triplicate, one

copy of each being then and there delivered to the defendant ; one to be retained by the salesman, and the third to be forwarded to his principal, the plaintiff. Each blank on which these orders were prepared contained, inter alia, the following plainly printed stipulations : " There is no condition or understanding not mentioned in this order. All sales subject to acceptance by the Suffolk Peanut Co., Suffolk, Va." These orders were not promptly forwarded by the salesman and did not reach the office of the plaintiff company until December 23. One order, No. 441, was for 100 bags, to wit : " 25 No. 1 Fancy Hand-Picked, at 4-1/2 " and " 75 bags No. 1 Virginia Shelled, at 4-1/2," to be shipped " at once." The other order, No. 442, was for " 500 bags No. 1 Virginia Shelled, at 4-1/2," to be shipped " Jan 14th." Meantime, on December 12, the day following the giving of the orders, the defendant wrote to the plaintiff : " The order for prompt shipment,.as given to your Mr. Thomas, I wish you to reply at once stating how soon the goods will be shipped, etc." To this the plaintiff immediately replied under date of December 17 : " Your letter of the 16th inst. has been received and we beg to say that Mr. Thomas has not yet sent the order in, and as soon as we receive it we will be prepared to give you reply to the same, etc."

As soon as the orders reached the plaintiff company on December 23, they wired defendant as follows : " Thomas report just received cannot accept 500 bag lot Virginia shelled Writing." On the same day the plaintiff wrote a letter from which the following extract is taken : " We have just this morning received the report of Mr. Thomas and beg to say that we have wired to you that we could not accept the order for the 500 bag lot of No. 1 Va. shelled peanuts. We can and will accept the order for the 75 bags but this is the best we can do. . . . Of course you understand from the sales sheet which you have that all sales are subject to our acceptance, etc."

The plaintiff having delivered the 100 bags, the order for which had been accepted as above indicated, and the defendant having refused to pay therefor, this action was brought to recover the purchase price thereof named in the accepted order. The defendant, not denying his liability to account for the 100 bags actually received, denied the right of the plaintiff to recover on the ground that the agent of the plaintiff had made an

absolute and binding contract for the delivery of the entire 600 bags at the times and prices named in the two orders.    That this contract, notwithstanding the express condition of the written orders to the contrary, was not to be subject to acceptance by the plaintiff.    That the refusal of the plaintiff to accept the order for 500 bags and to deliver them as ordered required the defendant to go into a rising market and buy them at an advanced price with a resultant loss to him of more than the amount of the plaintiff's claim.    The authority of the agent to make any such contract being expressly denied, the law imposed upon the defendant the burden of establishing it by sufficient evidence competent for that purpose.    In discharge of this burden the defendant could produce no evidence except the assertion, on the witness stand, of the agent that he had the authority to make an absolute sale and did not always use the printed forms in sending in orders, which were nevertheless filled.    Certainly the naked assertion that he had such authority would be insufficient to establish the fact under the circumstances of this case.    He did not pretend to show that such authority had ever been expressly conferred on him ; that any claim on his part that he possessed it ever was made to his principal or brought to the knowledge of the latter ; and especially that any facts, if there were any, to warrant the assumption that the apparent scope of his authority was wide enough to override the limitation expressed in the written and printed orders used, were communicated to the defendant and became the inducement which led to the giving of the orders.    On the contrary, he was forced to admit, on cross-examination, that these triplicate orders were the real basis of the transaction.    " Q. These are the three papers that represent this transaction ?    A. I suppose so. . . . Q. Then these are the three papers that were used in this transaction, were they not?    A. You have two there and this one ; yes, sir.    Q. These were all that were used in this transaction ?    A. Yes, sir."

The defendant admitted that he had frequently dealt with the plaintiff during a period of years through the same agent, but that in every instance the order was reduced to writing on blank forms, just as in this case, and that they were always prepared in triplicate, he retaining one.    His own letter of December 15, to the plaintiff spoke of an " order," he had given

the day before, not of a purchase he had made.    The company's prompt reply, under date of December 17, was a distinct and plain notice that they recognized no contract and would recognize none until the receipt of the orders gave them the chance to exercise their right to accept or reject them.    The defendant was then at liberty to cancel if he chose and it would seem but natural and fair to conclude that, if he then relied on the position he now assumes, he would have acted and notified the plaintiff of his action.    Certainly he would not have permitted to go unchallenged the emphatic statement in the plaintiff's letter of December 23, that every sale was subject to their acceptance, the very language of the order.    Yet the record fails to disclose any letter or telegram from the defendant advising the plaintiff of his claim, viz., that he had made an absolute contract with their agent for 600 bags and unless the goods were delivered he would go into the market and charge any difference in price to them.

Not until February 9, did he disclose the view he now takes of the transaction.

Another witness, also a merchant in Reading, was called by the defendant but he, also, testified that in his dealings with the plaintiff, through the same salesman, Thomas, the same printed orders were always used and the business conducted just as in this case.

Taking the evidence as a whole, then, and we think we have briefly noticed its essential features, we must conclude there was, at most, nothing more than a scintilla of evidence that the plaintiff had ever entered into the contract as claimed by the defendant.    There is no evidence that any facts were communicated to or known by the defendant, at the time he gave the two orders, to warrant him in assuming that the plaintiff would waive the right of acceptance so plainly provided for in the orders and with which he, by his previous dealings, was entirely familiar.    In the one case the acceptance of the order made a contract mutually binding and enforceable.    In the other the refusal to accept left the ex parte order without mutuality and lacking in the element essential to every contract.

We are unable to see, in the case before us, any room for the application of the principle declared in Keough v. Leslie, 92 Pa. 424, and kindred cases, because, as to the contract, which

the plaintiff now seeks to enforce, there is no dispute, no issue as to the real or apparent scope of the agent's authority.   The conflict only arises when the defendant attempts to set up a wholly different contract, the existence of which the plaintiff denies.

The learned trial court was, therefore, right in holding that the attack made by the defendant on the written orders had entirely failed; that the plaintiff's right to recover had not been successfully assailed, and that the law must leave the defendant in the position in which he had voluntarily placed himself.

The assignments of error are overruled and the judgment is affirmed.   ·